### Daniel UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL CHUPKA, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION |
| v. | |
| PEARSON PLC., JOHN FALLON, NATALIE DALE and STEPHEN JONES, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Daniel Chupka ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Pearson, plc. ("Pearson" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

### NATURE OF THE ACTION

1.       This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Pearson shares, or American Depositary Receipts ("ADRs"), between January 21, 2016 and January 17, 2017, inclusive (the "Class Period"), seeking remedies under the

Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against certain of Pearson' executive officers and directors.

2.      Pearson is an international education company with its principal operation in the education and consumer publishing markets. Pearson is in the business of coming up with and managing intellectual property, which it sells to customers under well-known brand names. The content is delivered to customers through a variety of mediums which include books and online services. Pearson also offers test creation, administration, and processing to teacher development and school software. Pearson's largest markets are the United States and Europe, respectively.

3.      The Company was founded and registered in 1897 under the laws of England and Wales and incorporated as a public company in 1981. Pearson is headquartered in London, England. Pearson qualifies as a Foreign Private Issuer and files regulatory filings and reports pursuant to Rule 13a-16 or 15d-17 under the Securities Exchange Act of 1934. Pearson's ADRs trade on the New York Stock Exchange ("NYSE") under the ticker symbol "PSO."

4.      Throughout the Class Period, Pearson and certain of its officers and directors made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made overly optimistic projections for 2017 and 2018 regarding its U.S. education business when, in reality, students were not likely to purchase Pearson's products when more affordable alternatives were available, resulting in an excess of unsold products.  As a result of choosing unrealistic future goals that it could never achieve, Pearson's statements were materially false and/or misleading.

5.      On January 18, 2017, Pearson filed Foreign Private Issuer Report on Form 6-K with the SEC providing certain business updates in connection with its regular January trading update. The Form 6-K stated, in relevant part:

**18 January 2017**

London

# Press Release

### Pearson January trading update

We expect to deliver operating profit in line with guidance for 2016, despite a further unprecedented decline in Q4 2016 in our North American higher education courseware business. Our 2016 restructuring program has been delivered in full and the financial benefits are a little higher than planned.

We are today announcing actions to accelerate our digital transition in higher education, to manage the print decline, and to reshape our portfolio. *Our guidance for 2017 reflects continued challenges and uncertainty in the North American higher education courseware market and we no longer expect to reach our prior operating profit goal for 2018.* The Board intends to recommend a final dividend of 34p for an overall 2016 dividend of 52p in line with our guidance, but *as a result of the factors above we intend to rebase our dividend from 2017 onwards.*

**2016 results:** we expect to report adjusted operating profit and adjusted earnings per share of approximately £630m and 57p, respectively, with revenues down approximately 8% in underlying terms primarily due to weakness in North American higher education courseware. We have continued to manage discretionary cost tightly and are accruing around £55m less than originally planned for our 2016 staff incentive programme, enabling us to report within the guidance range we had previously set.

Other than North American higher education courseware, our businesses have in aggregate performed in line with expectations. Online Program Management, virtual schools and professional certification all continued to grow. As expected US school courseware was impacted by a smaller market and lower participation rate, but benefited from share gains in Open Territories. North American student assessment profits rose slightly despite significant declines in revenue as we offset the impact of contract losses with cost reductions and the benefits of a higher weighting to digital services. In Core, our UK qualifications business is seeing a stabilisation in exam registrations as expected, and our Growth markets have returned to profitability.

*The North American higher education courseware market was much weaker than expected.* Our net revenues fell 30% during the final quarter resulting in an unprecedented 18% decline for the full year. We estimate 2% of this decline was driven by lower enrolment, particularly in Community College and amongst older students; 3-4% by an accelerated impact from rental in the secondary market; and approximately 12% due to an inventory correction in the channel reflecting the cumulative impact of these factors in prior years.

**2017 actions:** Whereas we had previously anticipated a broadly stable North American higher education courseware market in 2017, we now assume that many of these downward pressures will continue. We are the market leader in US Higher Education and will use that leadership to accelerate our shift to digital and maximise the value of our stand-alone text offerings with the following actions:

1. We are accelerating work to simplify our product technology platform and enhancing our courseware service capabilities with £50m of additional investment, which will remove barriers to faster product innovation,
   accelerate our product roadmap by two years and drive faster adoption of institution-wide Digital Direct Access for Pearson courseware.
2. We are increasing our participation in the courseware rental market, by:
a. reducing eBook rental prices by up to 50% across 2,000 titles - making digital rental the best option for price-conscious students.
b. launching our own print rental program, piloting with an initial group of 50 titles made available through Pearson's approved rental partners, ensuring Pearson is paid more often for the usage of our
   courseware. If successful we will scale this program rapidly.

**Reshaping our portfolio:** we are additionally announcing the following actions to reshape our portfolio and capital structure:

1. With the integration of Penguin Random House complete, and with greater industry-wide stability on digital terms, we intend to issue an exit notice regarding our 47% stake in Penguin Random House to our JV
   partner Bertelsmann in the contractual window, with a view to selling our stake or recapitalising the business and extracting a dividend.
2. We will use proceeds from this action to maintain a strong balance sheet; invest in our business; and return excess capital to shareholders whilst retaining an investment grade credit rating.
3. We will propose a final dividend of 34p for an overall 2016 dividend of 52p in line with 2015 and our guidance.  For 2017 we intend to rebase our dividend to reflect portfolio changes, increased investment, and our 2017 earnings guidance.
4. We will continue to reduce our exposure to large scale direct delivery services and focus on more scalable online, virtual, and blended services, across our portfolio.

**Outlook:** ***The challenges we have faced during 2016 mean we begin 2017 with a base level of underlying profitability that is around £180m lower than we had expected in early 2016.*** Our preliminary guidance range is for operating profit in 2017 of £570m to £630m, driving adjusted earnings per share of 48.5p to 55.5p.  This is based on our existing portfolio, a 2017 net interest charge of £74m, a tax rate of 20% and exchange rates on 31 December 2016.

This guidance is based on assumptions incorporating further declines in enrolment and other pressures in the North American higher education courseware market in 2017. The top of the range implies that this is offset as the impact of the 2016 inventory correction at key channel partners partially unwinds resulting in net revenue growth in our North American higher education courseware business of approximately 1%. The bottom of our guidance range assumes that inventory levels continue to fall resulting in a 7% net revenue decline. The rest of business is expected to perform broadly in line with trends seen in 2016.

***We are withdrawing our operating profit goal for 2018 reflecting portfolio changes and challenging and uncertain markets.***

(emphasis added)

6.    On this news, Pearson's stock price declined from a closing price of $9.99 per share on January 17, 2017 to $7.13 per share on January 18, 2017, ***a drop of approximately 29%.***

7.      As a result of Pearson's wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the Class purchased Pearson securities at artificially inflated prices and thereby suffered significant losses and damages.

### JURISDICTION AND VENUE

8.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.).  In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the U.S. mails, interstate telephone communications, and the facilities of the NYSE.

10.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District. Pearson's ADRs trade on the NYSE located within this District.

### PARTIES

11.      Plaintiff purchased Pearson securities within the Class Period and, as a result, was damaged thereby.  Plaintiff's certifications evidencing his transactions is attached hereto.

12.      Defendant Pearson is incorporated in England and Wales, with its principal executive offices located at 80 Strand London, England WC2R 0RL11400. Pearson's ADRs trade on the NYSE under the ticker symbol "PSO".

13.     Defendant John Fallon ("Fallon") has at all relevant times served as the Company's Chief Executive Officer.  Fallon joined Pearson in 1997 as a director of communications and was appointed President of Pearson, Inc. in 2000.  In 2003, Fallon was appointed Chief Executive Officer of Pearson's educational publishing businesses for Europe, Middle East and Africa.

14.     Defendant Stephen Jones, ("Jones") has at all relevant times served as the Company's Deputy Secretary.

15.     Defendant Natalie Dale ("Dale") has served the position as Deputy Company Secretary from March 2016 until the present.

16.     Defendants Dale and Jones are collectively referred to herein as the "Individual Defendants."

## CONTROLLING PERSON ALLEGATIONS

17.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Pearson's monthly reports, annual reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

18.     Pearson is an international education company with its principal operation in the education and consumer publishing markets. Pearson is in the business of coming up with and managing intellectual property, which it sells to customers under well-known brand names. The content is delivered to customers through a variety of mediums which include books and online services. Pearson also offers test creation, administration, and processing to teacher development and school software. Pearson's largest markets are the United States and Europe, respectively.

19.     Pearson's North American business serves educators and students in the US and Canada from early education through elementary, middle and high schools and into higher education with a wide range of products and services including: courseware including curriculum textbooks and other learning materials; assessments including test development and scoring; and services including the provision of online learning services. Pearson works with states, schools and colleges across the US to help make education more effective, accessible and affordable for a diverse community of learners.

20.     The Company was founded and registered in 1897 under the laws of England and Wales and incorporated as a public company in 1981. Pearson is headquartered in London, England. Pearson qualifies as a Foreign Private Issuer and files regulatory filings and reports pursuant to Rule 13a-16 or 15d-17 under the Securities Exchange Act of 1934. Pearson's ADRs trade on the NYSE under the ticker symbol "PSO."

### B.  The Material Misrepresentations and Omissions

21.     On January 21, 2016, the Company filed a trading statement on Form 6-K with the SEC for the month of January 2016 ("January 2016 6-K").  The January 2016 6-K stated the

Company's "2018 goals" were as follows: "with the full benefits of our restructuring programme, the launch of new products, and stability returning to US college enrolments and the UK qualifications market by the end of 2017, *we expect adjusted operating profit to be at or above £800m in 2018.*" (Emphasis added).

22.     More specifically, the 2016 Form 6-K stated, in relevant part:

> With the actions we are announcing today, combined with a moderate return to growth in our major markets over the next few years, *we expect adjusted operating profit to be at or above £800m in 2018.* Underpinning this goal are the following assumptions:
>
> 1. The key cyclical and policy factors that have hurt us - US college enrolments and UK Qualifications - stabilise by the end of 2017 and grow modestly thereafter helped by new product launches;
> 2. *We make modest market share gains in North American Higher Education subjects (STEM, college and career readiness) where we are launching our "next generation" courseware*;
> 3. As current contracts unwind, we see scope for further contraction in US state testing revenues through 2017 but stabilisation in 2018. We expect continued growth in professional certification and clinical assessment;
> 4. Our businesses in China and Brazil will benefit from the launch of new products, including Wall Street English New Student Experience;
> 5. We will continue to grow in our adjacent services businesses, led by online programme management, virtual schools and blended learning in English, as we bring new platforms and products to market and capitalise on strong market growth;
> 6. The successful delivery of the full benefits of the restructuring plan, with minimal disruption to sales, market share and operations from this major programme of change.

(Emphasis added).

23.     The January 2016 Form 6-K was signed by Defendant Jones.

24.     On February 26, 2016, the Company filed a trading statement on Form 6-K with the SEC for the month of February 2016 ("February 2016 6-K"). The February 2016 6-K stated the Company's "2018 goals" were as follows: "with the full benefits of our restructuring

programme, the launch of new products, and stability returning to US college enrolments and the

UK qualifications market by the end of 2017, *we expect adjusted operating profit to be at or above*

*£800m in 2018*." (Emphasis added).

25. Defendant Fallon was quoted as stating:

> *Our competitive performance during the last three years has been strong, but the challenges in our biggest markets have persisted for longer than anticipated.*
>
> *Pearson is now implementing the plans we announced in January to integrate our business, reduce our cost base and focus on fewer, bigger growth opportunities.*
>
> ***Education is a sector with large growth opportunities for Pearson,*** *and we are committed to helping millions of learners to progress in their careers and lives.*

(Emphasis added).  The February 2016 6-K further stated, in relevant part:

> With the actions we announced in January, combined with a moderate return to growth in our major markets over the next few years, *we expect adjusted operating profit to be at or above £800m in 2018.* Underpinning this goal are the following assumptions:
>
> 1. The key cyclical and policy factors that have hurt us - US college enrolments and UK Qualifications - stabilise by the end of 2017 and grow modestly thereafter helped by new product launches;
> 2. We make modest market share gains in North American Higher Education subjects (STEM, college and career readiness) where we are launching our "next generation" courseware;
> 3. As current contracts unwind, we see scope for further contraction in US state testing revenues through 2017 but stabilisation in 2018. We expect continued growth in professional certification and clinical assessment;
> 4. Our businesses in China and Brazil will benefit from the launch of new products, including Wall Street English New Student Experience;
> 5. We will continue to grow in our adjacent services businesses, led by online programme management, virtual schools and blended learning in English, as we bring new platforms and products to market and capitalise on strong market growth;

> 6. The successful delivery of the full benefits of the restructuring plan, with minimal disruption to sales, market share and operations from this major programme of change.

26. The February 2016 Form 6-K was signed by Defendant Jones.

27. On April 29, 2016, the Company filed a trading statement on Form 6-K with the SEC for the month of April 2016 ("April 2016 6-K").  The April 2016 6-K stated the Company's higher education programs and coursework in North America were growing:

> In North America, revenues fell modestly in underlying terms. Revenues declined in Learning Studio, as we retire our Learning Management System, and in Assessments, with growth in Pearson VUE more than offset by declines in school assessments due to already announced 2015 contract losses, the impact of which are more heavily weighted to the first half of the year. Revenues grew strongly in Connections Education, where four new full time statewide virtual public schools are now enrolling students for the 2016-17 school year, and in Pearson Online Services, with good growth in course enrolments at existing programmes and the launch of new programmes for Hofstra University and University of California, Riverside. *K12 and higher education courseware both grew modestly in the seasonally small first quarter.*

(Emphasis added).

28. The April 2016 Form 6-K was signed by Defendant Jones.

29. On July 29, 2016, Pearson filed a half year trading report on Form 6-K ("July 2016 6-K").  The Company reported that its "2018 goals are unchanged," reiterating to investors that "With the full benefits of our simplification programme, the launch of new products, and stability returning to US college enrolments and the UK qualifications market by the end of 2017, *we expect adjusted operating profit to be at or above £800m in 2018*." (emphasis added).

30. Defendant Fallon stated: "It is still relatively early in the year, and we have two big trading quarters in education ahead of us. Nonetheless *we are trading in line with our 2016*

*expectations, and making progress toward our target of £800m or more of operating profit by 2018.*" (emphasis added).

31.     The July 2016 6-K was signed by Defendant Dale.

32.     On October 17, 2016, Pearson filed a monthly trading report on Form 6-K for the month of October 2016 ("October 2016 6-K").  The Company stated that "***Pearson is reiterating its 2016 guidance and its 2018 goals are unchanged***." (emphasis added).  The Company further stated: "With the full benefits of our simplification programme, the launch of new products, and by the end of 2017, stability returning to US college enrolments, retail inventory levels and the UK qualifications market, *we expect adjusted operating profit to be at or above £800m in 2018*."

33.     Defendant Fallon stated:

> Our competitive performance remains strong in a tough market. We have achieved more than 90% of the growth and simplification restructuring programme we announced in January.
>
> *While market conditions continue to be challenging, particularly in higher education, thanks to tight cost management we are on track to deliver our guidance this year, and to achieve our long term growth goal.*

(Emphasis added).

34.     The October 2016 Form 6-K was signed by Defendant Dale.

**C.  The Truth Emerges**

35.     On January 18, 2017, the Company issued a trading statement on Form 6-K with the SEC for the month of January 2017 ("January 2017 Form 6-K").  The Company announced that it was not going to meet its 2018 projections, stating in relevant part:

**18 January 2017**
London

# Press Release

**Pearson January trading update**

We expect to deliver operating profit in line with guidance for 2016, despite a further unprecedented decline in Q4 2016 in our North American higher education courseware business. Our 2016 restructuring program has been delivered in full and the financial benefits are a little higher than planned.

We are today announcing actions to accelerate our digital transition in higher education, to manage the print decline, and to reshape our portfolio. *Our guidance for 2017 reflects continued challenges and uncertainty in the North American higher education courseware market and we no longer expect to reach our prior operating profit goal for 2018.* The Board intends to recommend a final dividend of 34p for an overall 2016 dividend of 52p in line with our guidance, but *as a result of the factors above we intend to rebase our dividend from 2017 onwards.*

**2016 results:** we expect to report adjusted operating profit and adjusted earnings per share of approximately £630m and 57p, respectively, with revenues down approximately 8% in underlying terms primarily due to weakness in North American higher education courseware. We have continued to manage discretionary cost tightly and are accruing around £55m less than originally planned for our 2016 staff incentive programme, enabling us to report within the guidance range we had previously set.

Other than North American higher education courseware, our businesses have in aggregate performed in line with expectations. Online Program Management, virtual schools and professional certification all continued to grow. As expected US school courseware was impacted by a smaller market and lower participation rate, but benefited from share gains in Open Territories. North American student assessment profits rose slightly despite significant declines in revenue as we offset the impact of contract losses with cost reductions and the benefits of a higher weighting to digital services. In Core, our UK qualifications business is seeing a stabilisation in exam registrations as expected, and our Growth markets have returned to profitability.

*The North American higher education courseware market was much weaker than expected.* Our net revenues fell 30% during the final quarter resulting in an unprecedented 18% decline for the full year.  We estimate 2% of this decline was driven by lower enrolment, particularly in Community College and amongst older students; 3-4% by an accelerated impact from rental in the secondary market; and approximately 12% due to an inventory correction in the channel reflecting the cumulative impact of these factors in prior years.

**2017 actions:** Whereas we had previously anticipated a broadly stable North American higher education courseware market in 2017, we now assume that many of these downward pressures will continue. We are the market leader in US Higher Education and will use that leadership to accelerate our shift to digital and maximise the value of our stand-alone text offerings with the following actions:

1. We are accelerating work to simplify our product technology platform and enhancing our courseware service capabilities with £50m of additional investment, which will remove barriers to faster product innovation,  accelerate our product roadmap by two years and drive faster adoption of institution-wide Digital Direct Access for Pearson courseware.
2. We are increasing our participation in the courseware rental market, by:
a. reducing eBook rental prices by up to 50% across 2,000 titles  - making digital rental the best option for price-conscious students.

b. launching our own print rental program, piloting with an initial group of 50 titles made available through Pearson's approved rental partners, ensuring Pearson is paid more often for the usage of our
courseware. If successful we will scale this program rapidly.

**Reshaping our portfolio:** we are additionally announcing the following actions to reshape our portfolio and capital structure:

1. With the integration of Penguin Random House complete, and with greater industry-wide stability on digital terms, we intend to issue an exit notice regarding our 47% stake in Penguin Random House to our JV
partner Bertelsmann, with a view to selling our stake or recapitalising the business and extracting a dividend.
2. We will use proceeds from this action to maintain a strong balance sheet; invest in our business; and return excess capital to shareholders whilst retaining an investment grade credit rating.
3. We will propose a final dividend of 34p for an overall 2016 dividend of 52p in line with 2015 and our guidance. For 2017 we intend to rebase our dividend to reflect portfolio changes, increased investment, and our 2017 earnings guidance.
4. We will continue to reduce our exposure to large scale direct delivery services and focus on more scalable online, virtual, and blended services, across our portfolio.

**Outlook:** *The challenges we have faced during 2016 mean we begin 2017 with a base level of underlying profitability that is around £180m lower than we had expected in early 2016.* Our preliminary guidance range is for operating profit in 2017 of £570m to £630m, driving adjusted earnings per share of 48.5p to 55.5p. This is based on our existing portfolio, a 2017 net interest charge of £74m, a tax rate of 20% and exchange rates on 31 December 2016.

This guidance is based on assumptions incorporating further declines in enrolment and other pressures in the North American higher education courseware market in 2017. The top of the range implies that this is offset as the impact of the 2016 inventory correction at key channel partners partially unwinds resulting in net revenue growth in our North American higher education courseware business of approximately 1%. The bottom of our guidance range assumes that inventory levels continue to fall resulting in a 7% net revenue decline. The rest of business is expected to perform broadly in line with trends seen in 2016.

*We are withdrawing our operating profit goal for 2018 reflecting portfolio changes and challenging and uncertain markets.*

(Emphasis added).

36. As a result of the news, Pearson's stock price fell from a closing price of $9.99 per share on January 17, 2017 to $7.13 per share on January 18, 2017, *a drop of approximately 29%*.

## ADDITIONAL SCIENTER ALLEGATIONS

37. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially

false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Pearson, their control over, and/or receipt and/or modification of Pearson's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pearson, participated in the fraudulent scheme alleged herein.

**LOSS CAUSATION AND ECONOMIC LOSS**

38.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Pearson's misconduct was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Pearson's stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members, was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

39.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Pearson's business, operations and financial condition, as alleged herein.  Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Pearson's securities to be artificially inflated.  Plaintiff and other Class members purchased Pearson's securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

### PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

40.     At all relevant times, the market for Pearson securities was an efficient market for the following reasons, among others:

(a) Pearson securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b) During the Class Period, Pearson securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Pearson filed with the SEC periodic public reports during the Class Period;

(d) Pearson regularly communicated with public investors via established market communication mechanisms;

(e) Pearson was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly

available and entered the public marketplace; and

(f)  Unexpected material news about Pearson was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

41.     As a result of the foregoing, the market for Pearson securities promptly digested current information regarding Pearson from all publicly available sources and reflected such information in Pearson's stock price.  Under these circumstances, all purchasers of Pearson securities during the Class Period suffered similar injury through their purchase of Pearson's securities at artificially inflated prices, and a presumption of reliance applies.

42.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld are material because an investor would have considered the Company's net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Pearson.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

44.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

45.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Pearson who knew that the "forward-looking statement" was false.  Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Pearson securities on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Pearson securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Pearson or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  Upon information and belief, these shares are held by thousands if not

millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

49.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> a.  whether the federal securities laws were violated by the defendants' respective acts as alleged herein;
>
> b.  whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;
>
> c.  whether the price of Pearson securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and
>
> d.  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**(Violation of Section 10(b) and Rule 10b-5 Against All Defendants)**

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Pearson securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

54.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pearson securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Pearson as specified herein.

56.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pearson's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Pearson and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Pearson securities during the Class Period.

57.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of the Individual Defendant's responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal affairs; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's internal affairs at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

58.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pearson's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements of the Company's business affairs throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Pearson's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Pearson's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pearson's securities during the Class Period at artificially high prices and were or will be damaged thereby.

60.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Pearson's financial results

and its adverse position with its retail foreign exchange customers, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pearson securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

61.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

63.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### (The Individual Defendants Violated Section 20(a) of the Exchange Act)

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    The Individual Defendants acted as controlling persons of Pearson within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants provided with or had unlimited

access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

66.      In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.      As set forth above, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

68.      By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

69.      This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

> (a)      Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

> (b)      Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages

sustained as a result of the defendants' wrongdoing, in an amount to be proven

at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred

in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law;

and

(e)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a jury trial.

Dated: February 24, 2017

_____

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
LEVI & KORSINSKY, LLP
733 Summer Street, Suite 304
Stamford, Connecticut 06901
Telephone:  (203) 992-4523
Facsimile:  (212) 363-7171

*Counsel for Plaintiff and Proposed Lead Counsel
for the Class*